IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LAUREN ADAMS and MICHAEL ADAMS,
Individually and as Natural Parents and
Next Friends of M.A., a Minor                                          PLAINTIFFS

v.                                                     CAUSE NO. 1:25-cv-40-LG-BWR

PASCAGOULA-GAUTIER SCHOOL
DISTRICT, et al.                                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PASCAGOULA-GAUTIER SCHOOL
DISTRICT'S [4] MOTION TO DISMISS FEDERAL CLAIMS
AND [8] MOTION TO DISMISS STATE LAW CLAIMS

Defendant Pascagoula-Gautier School District ("PGSD") seeks dismissal of

the state and federal law claims pursuant to Fed. R. Civ. P. 12(b)(6).  The Court

grants in part and denies in part these motions.  Further, the Court grants PGSD's

[16] and [17] Motions to Strike Plaintiffs' Exhibits, as Plaintiffs' documents were

not relied on in the original Complaint.  The Court grants Plaintiffs fourteen (14)

days, if needed, to leave to file an amended complaint and deems Plaintiffs' pending

[10] Motion to Amend Complaint moot.

## BACKGROUND

According to the Complaint Lauren Adams and Michael Adams are M.A.'s

parents.  M.A. attended the PGSD Eastlawn Elementary School as a special

education student.  M.A. has been diagnosed with autism spectrum disorder and

possesses limited communication skills.  Due to his disability, PGSD provides

certain services to M.A.

M.A. was assigned to Lakeisha Jackson's first-grade classroom. Wanda Clark served as an assistant teacher to Jackson. Savannah Bourgeois also served as an assistant teacher to Jackson at the beginning of the 2023–2024 school year but was moved to another classroom allegedly due to Jackson's inappropriate treatment of students. According to the complaint, Jackson and Clark began physically, mentally, and emotionally abusing M.A. as early as August 2023. Other teachers overheard M.A. screaming in the hallway that Jackson was hurting him and heard Jackson screaming at M.A. Other teachers reported their concerns to the school administration. In January 2024, Clark physically dragged M.A. to his aunt's car by the jacket.

On February 27, 2024, Principal Beth Varnes called M.A.'s parents about an incident but refused to elaborate further. M.A. told the parents that evening that Jackson stabbed M.A. in the arm with a pencil; M.A. received medical care for the wound. Assistant Superintendent Belinda Damon met with the parents and said that "Jackson put her hands around M.A.'s wrists and jerked him off the ground so hard that it created visible handprints on his wrists." Other teachers informed Lauren Adams that Jackson had harmed M.A. previously and that the school called the parents only because there were visible marks.

M.A. was removed from Jackson's classroom and placed in Hannah Murphy's classroom in February 2024. Murphy reported that M.A. had behavioral and academic issues. The parents then learned that Jackson had given M.A. a digital tablet in class. Jackson allowed him to play on it rather than working or

participating in class activities.  Further, M.A. did not complete any of the required testing from July 2023 through January 2024.

Plaintiffs filed this lawsuit in the Mississippi Jackson County Circuit Court on January 28, 2025, against PGSD, Jackson, and Clark.  Plaintiffs' claims include Fourteenth Amendment Substantive Due Process; Fourth Amendment Excessive Force pursuant to 42 U.S.C. §1983; Individuals with Disabilities Education Act ("IDEA") pursuant to 29 U.S.C. § 794 ("§ 504 of the Rehabilitation Act"); Americans with Disabilities Act ("ADA"); negligence; assault and battery; and intentional infliction of emotional distress.  Plaintiffs seek actual, compensatory, and emotional distress damages; attorney's fees and costs; prejudgment and post-judgment interest; punitive damages.

Defendants removed this action pursuant to 28 U.S.C. § 1441.  In separate motions, PGSD seeks dismissal of the various federal and state law claims for failure to state a claim.  In their response Plaintiffs concede the Motion regarding the 42 U.S.C. §§ 1981, 1985, 1986 claims.  Plaintiffs also concede the intentional infliction of emotional distress claims on behalf of the Adams'. The parties have fully briefed the issues.

## DISCUSSION

Under Rule 12(b)(6), the Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted). Further, "any ambiguities in the controlling substantive law must be resolved in the

plaintiff's favor." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). Courts do not have to accept legal conclusions presented as factual allegations. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir.

---

[1] The pleading standard in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), was abrogated by *Twombly*. *See* 550 U.S. at 561–64. Furthermore, Plaintiffs' reliance on the pleading standard in *Morton v. City of Clarksdale*, 367 So. 3d 979 (Miss. 2023), is inapplicable because the Federal Rules of Civil Procedure control. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (Federal courts sitting in diversity apply federal procedural law).

2002).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded legally cognizable claims. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).[2]

In contrast, a Rule 56 motion for summary judgment goes beyond the pleadings and tests the sufficiency of the evidence a party can produce in support of those issues on which it will bear the burden of proof at trial. Fed. R. Civ. P. 56; *Harris v. Mississippi Valley State Univ.*, 899 F. Supp. 1561, 1566 (N.D. Miss. 1995).

## I.  42 U.S.C. § 1983 CLAIMS

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).  The statute provides a cause of action against a person who, acting under color of state law, violates an individual's rights secured by the Constitution or federal law.  *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citation omitted); 42 U.S.C. § 1983.  Plaintiffs must have "an underlying constitutional or statutory violation" as a "predicate to liability under § 1983." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989). Plaintiffs allege PGSD and its employees violated their constitutional rights under the Fourteenth Amendment by violating M.A.'s bodily integrity and violating Mr.

---

[2] A Rule 12(b)(6) dismissal is not warranted simply because the district court may believe that the plaintiff is unlikely to prevail on the merits. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986). "Even if it seems 'almost a certainty to the court that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim." *Id.* (quoting *Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759, 762 (5th Cir.1984))

and Mrs. Adams' right to care, custody, and control of their child. Plaintiffs also allege generally that PGSD violated the Fourth Amendment through excessive force.

Local governments, including school districts, can be directly sued for § 1983 claims. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To demonstrate a § 1983 violation, Plaintiffs must show: (1) a policymaker with actual or constructive knowledge, (2) an official policy or custom, and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *See Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "In the context of a 12(b)(6) motion in a section 1983 [claim], the focus should be whether the complaint properly sets forth a claim of a deprivation of rights . . . secured by the Constitution . . . caused by persons acting under color of state law." *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022) (citation omitted).

The determination of whether an official has final policymaking authority is a question of law, so "a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016). Thus, for Plaintiffs' § 1983 case to survive the pleading stage, they must connect the school's policymaker to the alleged unconstitutional official policy. While Plaintiffs need not "supply an answer to the

*legal* question of the specific identity of [PGSD's] policymaker under the relevant statutory scheme[,]" they need to plead some "facts [that] establish that the challenged policy was promulgated or ratified by [PGSD's] policymaker[.]"  *See id.* at 285; *Benfer v. City of Baytown*, 120 F.4th 1272, 1285–86 (5th Cir. 2024) (citation omitted).[3]

## FOURTEENTH AMENDMENT

Plaintiffs allege two policies that violate M.A.'s right to bodily integrity: physical abuse and a failure to train to prevent and report physical abuse. Plaintiffs also allege that PGSD ratified the employees' conduct.  "[C]orporal punishment is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."  *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305–06 (5th Cir. 1987) (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984)).

---

[3] Plaintiffs allege the principal and superintendent were policymakers, so they allege the school's policymakers knew about the abuse and ratified the abuse. Plaintiffs rely on §§ 37-9-14, 37-9-71, and 37-11-18.1 of the Mississippi Code. Plaintiffs are incorrect.  Under Mississippi law, the school board is the "official policy maker" in this case.  *See Sturgis v. Copiah Cnty. Sch. Dist.*, No. 3:10-cv-455-DPJ-FKB, 2011 WL 4351355, at *4 (S.D. Miss. Sept. 15, 2011) ("[T]he school board is the sole policymaker for school districts in Mississippi."); *Shepard v. Cleveland Sch. Dist.*, No. 4:17-cv-91-DMB-JMV, 2019 WL 4784612, at *8 n.23 (N.D. Miss. Sept. 30, 2019) (same); *Touchard v. George Cnty. Miss. Sch. Dist.*, No. 1:21-cv-168-TBM-RPM, 2024 WL 1130277, at *5 (S.D. Miss. Jan. 12, 2024) (same).

## A. PHYSICAL ABUSE AS CUSTOM

Plaintiffs allege PGSD has a custom of abusing students in violation of the Fourteenth Amendment. "[U]nconstitutional conduct must be directly attributable to the [school] through some sort of official action or imprimatur; isolated unconstitutional actions by [school] employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (citations omitted). Generally, policies arise from "policy statements, ordinances or regulations. But a policy may also be evidenced by custom[.]" *Id.* at 579. Customs are a "'persistent, widespread practice' that [are] 'so common and well settled as to constitute a custom that fairly represents [school district] policy.'" *Culbertson*, 790 F.3d at 628 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

> If actions of [school] employees are to be used to prove a custom for which the [school] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school] employees.

*Webster*, 735 F.2d at 842. A custom "requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (citation omitted); *Benfer*, 120 F.4th at 1286. "[A] plaintiff must do more than describe the incident[s] that gave rise to his injury." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021). "Showing a pervasive pattern is a heavy burden." *Benfer*, 120 F.4th at 1286 (quoting *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir. 2020)).

Plaintiffs identify two specific instances of PGSD's employees allegedly physically abusing M.A. First, in January 2024, Ms. Clark dragged M.A. by the

coat to his aunt's car during an after-school pickup.  Second, on February 27, 2024, Jackson stabbed M.A. with a pencil and "put her hands around M.A.'s wrists and jerked him off the ground so hard that it created visible handprints on his wrists." Compl. [1-1] at 6–7.  Plaintiffs also allege that at the beginning of the 2023-2024 school year, "Ms. Bourgeois moved out of Jackson's classroom due to the inappropriate way Jackson treated students."  *Id.* at 6.  And, at some point, teachers overheard M.A. screaming in a hallway that Jackson was hurting him.  Other PGSD employees "reported that M.A.'s physical abuse 'was not the first time.'"  *Id.* at 7.[4]

"Guidance from appellate courts on how many [instances] are enough to prove a custom and notice to the policymaker is sparse."  *Flanks v. City of New Orleans*, No. 23-6897, 2025 WL 660037, at *10 (E.D. La. Feb. 28, 2025); *Valdez*, 852 F. App'x at 135 (Fifth Circuit has "no rigid rule regarding numerosity to prove a widespread pattern of unconstitutional acts" at the pleadings stage.).  Nevertheless, Fifth Circuit caselaw shows that two specific incidents of abuse—paired with vague assertions of other physical abuse—over the course of several months do not constitute a custom, nor give notice to the school's policymaker.  *See* 852 F. App'x at 135–36 (Six incidents over five years do not support reasonable inference of a

---

[4] Plaintiffs also allege Jackson screamed at M.A., but "verbal abuse does not give rise to a constitutional violation under 42 U.S.C. § 1983, so any yelling that may have occurred is not actionable."  *See Wyatt v. Fletcher*, 718 F.3d 496, 504 (5th Cir. 2013) (citations omitted); *Acadia Ins. v. Hinds Cnty. Sch. Dist.*, No. 3:12-cv-188-CWR-LRA, 2013 WL 2182799, at *5 n.4 (S.D. Miss. May 20, 2013) ("It is self-evident that a student's constitutional interest in *bodily* integrity does not extend to allegations of verbal abuse.").

custom.); *Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025) (Six additional fights over several months involving different perpetrators, victims, and motives were insufficient to allege a custom or put officials on notice.); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (finding twenty-seven complaints over a four-year period "were insufficient to establish a pattern of excessive force" without further context); *Benfer*, 120 F.4th at 1286 (finding the plaintiff's failure to "detail the facts surrounding" five K-9 dog encounters "or make any attempt to show the needed 'similarity and specificity' between events" amounted to a threadbare complaint).

The two detailed incidents of dragging M.A. by the coat and stabbing him, combined with vague assertions of physical abuse that lack the "needed factual context" of these incidents, do not rise to the "specificity" required to establish a custom or notice to the policymaker. *See Benfer*, 120 F.4th at 1286; *Davidson*, 848 F.3d at 396 (citation omitted). Therefore, Plaintiffs did not state a plausible custom of abuse claim under § 1983 claim. *See Iqbal*, 556 U.S. at 678.

## B. Failure to Train

A failure to train or supervise may give rise to § 1983 municipal liability. *Benfer*, 120 F.4th at 1286. To prevail on a failure to train claim, Plaintiffs must establish that "(1) the [school] failed to train or supervise the [employees] involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* at 1286–87 (quoting *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir.

2023)) (citation modified). "A municipality's culpability for a deprivation of right is at its most tenuous where the claim turns upon a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). A plaintiff must demonstrate "at least a pattern of similar incidents" for municipal liability to attach. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (internal citations omitted).

"In order for liability to attach based on an inadequate training claim, a plaintiff must allege with *specificity* how a particular training program is defective." *Benfer*, 120 F.4th at 1287 (emphasis added) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)) (citation modified). "[T]he focus must be on the adequacy of the training program in relation to the tasks the particular [employees] must perform." *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting *Snyder*, 142 F.3d at 798). A plaintiff cannot merely style the "complaint[] about the specific injury suffered as a failure to train claim." *Id.*: *see also City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").

Plaintiffs allege that PGSD failed to train its employees.  However, Plaintiffs present no facts apart from M.A.'s abuse.[5]  Plaintiffs' arguments and allegations run afoul of the requirement that a plaintiff cannot merely style the "complaint[] about the specific injury suffered as a failure to train claim."  *See Roberts*, 397 F.3d at 293; *City of Canton*, 489 U.S. at 391 (emphasis added) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the *particular injury-causing conduct*.").  Plaintiffs' allegations lack specificity and provide "nothing more than the bald argument that an inadequacy existed and that it caused [M.A.'s] rights to be violated."  *See Amerson v. Pike County*, No. 3:09cv53-DPJ-FKB, 2013 WL 53900, at *4 (S.D. Miss. Jan. 3, 2013) (citation omitted); *Benfer*, 120 F.4th at 1287.  Because Plaintiffs failed to adequately plead the first element of failure to train under § 1983, the Court need not address the other elements.  *See Benfer*, 120 F.4th at 1286–87.  Plaintiffs have failed to state a plausible claim for failure to train.  *See Iqbal*, 556 U.S. at 678.

---

[5] The Court will not consider Plaintiffs' [11-2] and [13-1] Exhibits, as the original Complaint does not reference the 2024-2025 Student Handbook Elementary Edition.  Plaintiffs' [12] Memorandum admits that Plaintiffs were unaware of the handbook until after they submitted the original Complaint.  *See* Pls.' Mem. [12] at 15.  Thus, Plaintiffs were not "refer[ring] to these documents in the pleadings[,]" and so the Court "must limit itself to the contents of the pleadings[.]"  *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted).  The Court will strike the exhibits.

C.  RATIFICATION OF ABUSE

Municipal liability may go forward based on a ratification theory.  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the [school] because their decision is final."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  "Ratification in this context requires that a policymaker knowingly approve a subordinate's actions and the improper basis for those actions.  Otherwise, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the [school]."  *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (citation modified).  "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the [school]."  *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 WL 1553539, at *5 (5th Cir. May 17, 2022) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)).  "Several Fifth Circuit cases have confirmed the quite narrow scope of the ratification theory."  *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992); *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982); *Piotrowski*, 237 F.3d at 581–82).

Here, Plaintiffs have failed to allege facts sufficient to raise the ratification theory.  Plaintiffs assert that PGSD's failure to reprimand or discharge the employees who were aware of the abuse amounts to ratification.  The Fifth Circuit has rejected such arguments without more facts.  *See Fraire*, 957 F.2d at 1278–79 (declining to find custom or policy where a city failed to discipline employee).  Fifth

Circuit precedent limits the ratification theory to "extreme factual situations[,]" and "[w]hether a case presents an extreme factual situation . . . is a question of law." *See York v. Welch*, No. 20-40580, 2024 WL 775179, at *6 (5th Cir. Feb. 26, 2024) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); *Peterson*, 588 F.3d at 848). Plaintiffs' reliance on *Edenfield v. Est. of Willets*, No. Civ. 05-00418 SOM/BM, 2006 WL 1041724 (D. Haw. Apr. 14, 2006)—an out-of-Circuit case—to interpret the Fifth Circuit's *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), is not persuasive.

The facts presented do not amount to *Grandstaff*'s extreme facts. *See id.* (quoting 767 F.2d at 166) (describing the *Grandstaff* defendants' failure to take any action or reprimand after officers "poured" gunfire onto a third party's property— killing the third party—as "unworthy, if not despicable, means to avoid legal liability"). Plaintiffs have failed to state a plausible claim for ratification. *See Iqbal*, 556 U.S. at 678.

## D.  PARENTAL RIGHT TO CARE, CUSTODY, AND CONTROL

For Mr. and Mrs. Adams to succeed on a Fourteenth Amendment Due Process claim, they "must show that they have asserted a recognized 'liberty or property' interest . . . and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law[.]" *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted). "One of the 'fundamental liberty interests' recognized by the Court is the 'interest of parents in the care, custody, and control of their children.'" *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288

(5th Cir. 2001) (quoting *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000)) (plurality opinion)).

Plaintiffs argue that the abuse to M.A. and PGSD's failure to inform the parents of the abuse interfered with the parents' fundamental right to the "care, custody, and control of their [child]." *See Troxel*, 530 U.S. at 65. Plaintiffs allege that the violation caused Mr. and Mrs. Adams to suffer fear, stress, anxiety, and worry. Plaintiffs provide no allegation that PGSD maintained a policy or custom of ignoring parental rights to care, custody, and control—apart from M.A.'s own experience with alleged abuse. *See supra* (*Monell* requires an official policy or custom.). The Court does not accept the legal conclusion of PGSD's violation as fact. *See Walker*, 938 F.3d at 735. Thus, Plaintiffs failed to plausibly claim that PGSD is liable for violating the parents' right to the care, custody, and control under § 1983. *See Iqbal*, 556 U.S. at 678 (citation omitted).

## FOURTH AMENDMENT

Plaintiffs' [12] Memorandum failed to address the Fourth Amendment Excessive Force claim against PGSD. Their argument entirely focuses on whether Jackson and Clark's actions establish a Fourth Amendment claim. Plaintiffs fail to discuss or argue that the alleged excessive force satisfies *Monell*'s element of a policy or custom to establish liability for PGSD. *See Culbertson*, 790 F.3d at 628. Even if Plaintiffs intended to preserve their excessive force claim against PGSD, it fails the *Monell* analysis for the same reasons discussed *supra*. *See Iqbal*, 556 U.S. at 678 (citation omitted).

## II. DISCRIMINATION CLAIMS

Plaintiffs' disability discrimination claims involve three sources of federal law: IDEA, the ADA, and § 504 of the Rehabilitation Act.[6]

Plaintiffs allege that PGSD violated § 504 of the Rehabilitation Act and the ADA through denial of a FAPE and disparate treatment. The ADA and the Rehabilitation Act have the same liability standard. *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023). Both provide for vicarious liability, so a plaintiff may sustain a claim against a public entity for acts committed by its employees. *Id.* To establish a prima facie case under either statute, a plaintiff must show:

> (1) that he is a qualified individual . . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Fort Bend Indep. Sch. Dist.*, 2 F.4th at 417 (alteration in original) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).[7]

---

[6]Generally, exhaustion is necessary when the gravamen of the lawsuit is "the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education [("FAPE")].'" *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). But "if the relief sought is not one that the IDEA can provide, such as compensatory damages, the plaintiff need not exhaust the IDEA's administrative hurdles." *Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 515 (5th Cir. 2024). Here, Plaintiffs need not exhaust the IDEA administrative procedures because they seek compensatory damages. *See id.* at 515.

[7] The causation element is the only material difference between the statutes. "Section 504 requires that the plaintiff's disability be the 'sole reason' for the exclusion or denial of benefits, but the ADA's standard is less stringent." *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)).

The Supreme Court recently held that "ADA and Rehabilitation Act claims based on educational services [are] subject to the same standards that apply in other disability discrimination contexts." *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. ----, 145 S.Ct. 1647, 1655 (2025).  As a result, the Supreme Court abrogated *Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982), which created the bad faith or gross misjudgment rule applied in Fifth Circuit caselaw.  *See* 145 S.Ct. at 1657; *D.A. ex rel. Latasha A. v. Houst. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014); *Estrada v. S.A. Indep. Sch. Dist.*, 575 Fed. App'x 541, 545 (5th Cir. 2014).  Because none of the parties have briefed the Court on the issue of plausibility of the claims under this new standard and given that the Plaintiffs are granted leave to file an amended complaint, the Court will not deem these claims implausible at this time.

### III.  STATE LAW CLAIMS

Plaintiffs claim that PGSD is liable under the Mississippi Tort Claims Act ("MTCA").  In short, the Complaint does not state what negligent act or omission, within the scope of employment, gives rise to liability or waives PGSD's sovereign immunity under the MTCA.  Plaintiffs assert that PGSD was negligent in "providing M.A. a safe school environment, supervising and training employees to prevent abuse, and supervising and training employees to report suspected child abuse immediately."  *See* Pls.' Mem. [14] at 6, 10.  These claims are clearly not present in the Complaint, and the citations referred to in the memorandum apply to

the § 1983 claims arising under *federal law*.  It is inappropriate to edit the Complaint and raise new state law claims in response to a Motion to Dismiss.  *See Lee v. Jackson County*, No. 1:13cv441-HSO-RHW, 2015 WL 11117900, at *3 n.3 (S.D. Miss. Sept. 25, 2015) ("The Court cannot and will not consider claims raised in response to" a motion to dismiss.); *Skinner v. Gautreax*, 549 F. Supp. 3d 493, 499 (M.D. La. 2021).  In this determination, the Court does not consider, nor address, the validity of Plaintiffs' MTCA claims found in Plaintiffs' [10-1] Proposed Amended Complaint.  This determination solely addresses the original Complaint's failure to state a claim.  Therefore, the Court will dismiss the MTCA claims against PGSD for failure to state a claim.  *See Iqbal*, 556 U.S. at 678 (citation omitted).

## IV. DAMAGES

Plaintiffs do not contest that they are not entitled to an award of punitive damages against PGSD.  The parties dispute whether attorney's fees may be awarded.  Plaintiffs do not contest that they are unavailable under the MTCA, however they argue that attorney's fees are available under § 1983.  The Court has determined that Plaintiffs' § 1983 claims against PGSD are implausible, so the § 1983 attorney's fees as to PGSD are moot.  *See Machetta v. Moren*, 726 F. App'x 219, 221 (5th Cir. 2018) (citing 42 U.S.C. § 1988).

PGSD argues that emotional distress damages are unavailable under the ADA or Rehabilitation Act.  Plaintiffs concede that emotional distress damages are unavailable under the Rehabilitation Act, but they argue that it is an open question of law as to whether they may seek such damages under the ADA.  PGSD relies on

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 678 (5th Cir. 2020), *aff'd*, 596 U.S. 212 (2022), where the Fifth Circuit held that emotional distress damages are not recoverable under the Rehabilitation Act.  The Fifth Circuit has not decided whether emotional distress damages are recoverable under the ADA. *See Lartigue*, 100 F.4th at 523 (The Fifth Circuit has "expressly declined to decide whether *Cummings* extends to claims under Title II of the ADA[.]").  "Any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor."  *Walker*, 938 F.3d at 735 (citation modified).  Thus, at this stage of the proceedings it is not improper for Plaintiffs to seek such damages under the ADA.

## CONCLUSION

The Court grants the 12(b)(6) Motions to dismiss the Fourteenth Amendment and Fourth Amendment § 1983 claims and the MTCA claims against PGSD.  In view of the Court's ruling here, the Plaintiff, if necessary, will be given an opportunity to file an amended complaint.  Plaintiffs are encouraged to circumspectly evaluate claims and are reminded that factual clarity, including how the facts apply to each defendant on each individual claim, is essential.  To the extent that the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant PGSD's [4] Motion to Dismiss Federal Claims is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant PGSD's [8] Motion to Dismiss State Law Claim(s) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant PGSD's [16] and [17] Motions to Strike are **GRANTED**.  The [11-1], [11-2], and [13-1] Exhibits are hereby **STRICKEN**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' pending [10] Motion to Amend Complaint is denied as **MOOT**.  Plaintiffs are granted fourteen (14) days' leave, if necessary, to file an amended complaint.

**SO ORDERED AND ADJUDGED** this the 16th day of July, 2025.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.

UNITED STATES DISTRICT JUDGE