IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
SOUTHERN DIVISION

LAUREN and MICHAEL ADAMS
as Natural Parents and Next Friends of
M.A., A minor                                                              PLAINTIFFS

VERSUS                                                    CAUSE NO. 1:25-CV-40-LG-BWR

PASCAGOULA GAUTIER SCHOOL DISTRICT, and
LAKESHIA JACKSON, Individually; and
WANDA CLARK, Individually                                          DEFENDANTS

# AMENDED COMPLAINT

### [JURY TRIAL DEMANDED]

COME NOW the Plaintiffs, Lauren and Michael Adams, as Natural Parents and Next Friends of, M.A., A Minor, by and through their attorney, COURTNEY P. WILSON of the Tynes Law Firm, P.A., and would file this Amended Complaint against the Defendants named herein, and in support thereof presents the following to wit:

### PARTIES

1.      Plaintiffs, Lauren and Michael Adams, are adult resident citizens of Jackson County, Mississippi.  They bring this claim on behalf of their son and next friend, M.A., a minor.

2.      Defendant, Pascagoula Gautier School District ("PGSD"), is a school district organized under the laws of the State of Mississippi and is a political subdivision within the State of Mississippi, with the ability to sue and be sued, and which at all relevant times employed Defendants, Lakeshia Jackson and Wanda Clark.  Defendant, PGSD, may be served with process in the time and manner provided by law by and through service of a Complaint and Summons upon its Superintendent, Billy Ellzey, 1006 Communy Ave., Pascagoula, Mississippi 39567.

1

3.      Defendant, Lakeshia Jackson ("Jackson"), is a person of full age and majority and a citizen of and resides in Jackson County, Mississippi.  At all relevant times herein, Lakeshia Jackson was employed as a teacher in the PGSD, and was acting and/or neglected to act in the course and scope of her employment and under color of state law.  Jackson is made a defendant herein individually.  Defendant, Lakeshia Jackson, may be served process of this Court in the time and manner provided by law pursuant to Rule 4 of the Federal Rules of Civil Procedure wherever she may be found.

4.      Defendant, Wanda Clark ("Clark"), is a person of full age and majority and a citizen of and resides in Jackson County, Mississippi.  At all pertinent and relevant times herein, the said Wanda Clark was employed as an assistant teacher in the PGSD, and was acting and/or neglected to act in the course and scope of her employment and under color of state law.  Clark is made a defendant herein individually.  Defendant, Wanda Clark, may be served process of this Court in the time and manner provided by law pursuant to Rule 4 of the Federal Rules of Civil Procedure wherever she may be found.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction due to Plaintiffs' claims alleging a violation of federal law pursuant to 28 U.S.C. § 1331 (federal question).

6.      Venue is proper in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391, as a substantial part of the events and/or omissions giving rise to this claim occurred in this judicial district.

7.      Personal Jurisdiction is proper in this Court as the Defendants reside in the Southern District of Mississippi.

2

8.    Whenever and wherever reference is made in this complaint to any act by a Defendant and/or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## FACTS

9.    At all times relevant hereto the Defendants, Lakeshia Jackson and Wanda Clark, acting individually and in concert with each other, as set forth herein below, acted unreasonably and with deliberate indifference to, and in reckless disregard for the constitutional rights of and the civil rights of the Plaintiff, M.A.

10.    M.A. is a minor child with a disability within the meaning of all applicable statutes and including Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the American with Disabilities Act, 42 U.S.C § 12131.  M.A. is a minor child under the age of eighteen.  The parents and next friends of the minor, Lauren and Michael Adams, assert an independent claim on their own behalf as well.

11.    At the time of these events, underlying these causes of action, Plaintiff, M.A., was a special education student entrusted to the care of PGSD and the other named Defendants at Eastlawn Elementary School in Pascagoula, Mississippi.

12.    On or about February 27, 2024, M.A. was a special-education student of PGSD and was assigned to Lakeshia Jackson's first-grade classroom with Wanda Clark as the assistant teacher.  M.A. suffers from autism spectrum disorder with communication limitations and has been determined to need certain services and such services are to be provided by the PGSD.

13.    As early as August 2023, Jackson and Clark began inflicting physical and mental/emotional abuse on M.A.

14.    Jackson pulled M.A. into the hallway and other teachers heard M.A. screaming that Jackson was hurting him.

15.    Jackson pulled M.A. behind a door and other teachers heard Jackson screaming at M.A.

16.    During afterschool pick-up in January 2024, Ms. Clark physically drug M.A. to his aunt's car by his jacket.

17.    Upon information and belief, other teachers at PGSD reported their concerns to the School Administration, but no action was taken.

18.    Upon information and belief, Savannah Bourgeois was Jackson's assistant at the beginning of the 2023-2024 school year.  But Ms. Bourgeois moved out of Jackson's classroom due to the inappropriate way Jackson treated students.  Despite this knowledge, PGSD took no action to correct or prevent Jackson's abusive actions.

19.    On February 27, 2024, Principal Beth Varnes called M.A.'s parents about an "incident" but refused to disclose what happened because it was a "personnel matter."

20.    Later that evening, M.A. disclosed to his parents that Jackson had stabbed M.A. in the arm with a pencil.  M.A. received medical care for a puncture wound to his right arm.

21.    Assistant Superintendent Belinda Dammen met with M.A.'s parents and informed them that Jackson put her hands around M.A.'s wrists and jerked him off the ground so hard that it created visible handprints on his wrists.  Ms. Dammen advised that this was not considered assault.  No mention was made of the pencil stabbing.

22.    Lauren Adams was approached by other teachers and informed that this was not the first time Jackson had harmed M.A. and that the only reason the school called was because this time Jackson left marks on M.A.

23.     This physical/verbal/mental/emotional abuse continued for the 23-24 school year until M.A. was moved from Jackson's classroom in February 2024.

24.     Based upon information and belief, Jackson, Clark, Principal Varnes, Assistant Superintendent Dammen, and other school employees knew of this abuse and failed to notify the proper authorities.

25.     The abuse inflicted on M.A. by Ms. Jackson and Ms. Clark was administered in bad faith and in a manner exhibiting a wonton and willful disregard of M.A.'s safety and disabilities and was objectively unreasonable under the circumstances.

26.     Following the incidents, Ms. Adams took M.A. to see medical providers who examined and treated M.A. for the physical and mental injuries he suffered as a result of Jackson and Clark's actions.

27.     Following these incidents, the PGSD failed to take any remedial or disciplinary action to correct the violation of M.A.'s rights.

28.     Upon information and belief, M.A. was subjected to this abuse by the same instructors, Jackson and Clark, on more than one occasion.

29.     In addition, M.A. became extremely fearful of attending school and was terrified that he might be subjected to further abuse.

30.     M.A. was physically injured and emotionally traumatized by the continual administration of physical/emotional abuse and the fear of further abuse.

31.     Despite knowing of Jackson's and Clark's abuse, the PGSD made no effort to protect its students or ameliorate the danger.  Further, PGSD failed to inform M.A.'s parents of the abuse until the visible evidence was undeniable.  In fact, PGSD administration decided not to notify M.A.'s parents of abuse by his teachers.

32.     In February 2024, M.A. was moved to a new teacher's classroom, Ms. Hannah Murphy.  Ms. Murphy immediately expressed concerns about M.A.'s behavior and academic progress.  Ms. Murphy reported serious behavior problems that interfered with M.A.'s ability to participate in class and learn.

33.     This was the first time M.A.'s parents heard about academic or behavioral issues. From July 2023 – February 2024, M.A. received good grades, positive behavior marks, and awards from Ms. Jackson.

34.     M.A.'s parents learned that Ms. Jackson often gave Michael a tablet when he did not want to work and allowed him to play on the tablet instead of participating in class.  Further, M.A. did not complete any of the required testing from July 2023 – February 2024.

35.     M.A.'s parents had to attend class with him for several weeks to help Ms. Murphy bring his behavior under control and teach him how to participate in class appropriately.

36.     M.A. suffered in his academic and behavioral education.  M.A. was effectively denied access to academic and behavioral services due to his disability.

37.     At all times herein, the Defendants, Jackson, Clark, and PGSD acted under color of State law, within the course and scope of their employment.

38.     At all times relevant to this civil action, the Defendant, PGSD, had in effect an unofficial policy, practice, or custom of failing to train its employees to prevent and report physical abuse, in violation of PGSD policy, and state law.

39.     At all times herein, Defendants, PGSD, Jackson, and Clark acted with deliberate indifference to M.A.'s federally protected rights.

40.     At all times pertinent herein, the Defendants, Jackson and Clark, acted willfully, wantonly, unreasonably, recklessly, and with deliberate indifference to, and with intentional disregard of the constitutional and civil rights of the minor Plaintiff.

41.     The Defendants acting individually and together, under color of law, engaged in a course of conduct that caused the emotional and mental pain and suffering, physical injuries, and damages of M.A.

42.     Plaintiffs have sustained damages for which they are entitled to recover of and from the Defendants. The Defendants are liable unto your Plaintiffs jointly and severally for the wrongful acts complained of herein.

43.     The actions of the Defendants, Jackson and Clark, were willfully in violation of M.A.'s, federally protected rights, and said willful and reckless actions justify the imposition of punitive damages.

**CAUSES OF ACTION**

Count 1 - Fourteenth Amendment Substantive Due Process – Bodily Integrity

44.     Plaintiffs incorporate and adopt the allegations from the preceding paragraphs and incorporate them here as if copied fully.

45.     From 2023 until 2024, M.A. had a clearly established constitutional right to bodily integrity and to be free from abuse and the use of force that was arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.

46.     The Defendants, Jackson and Clark, are liable to M.A. for violating his Fourteenth Amendment right to bodily integrity and to be free from the administration of physical abuse which was arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.

47.    Jackson and Clark, as PGSD teachers/assistant teachers acted under color of law in supervising, teaching, and abusing M.A.

48.    The Defendants, Jackson and Clark, violated M.A.'s liberty interest by physically and mentally abusing M.A. without consent and in contravention of his fundamental right to bodily integrity.  These abusive acts include stabbing him with a pencil, jerking him from the ground with such force as to leave handprints, screaming in his face, and dragging him around by his jacket.  These abusive acts were objectively unreasonable.

49.    As a direct and proximate result of the Defendants', Jackson's and Clark's, violation of M.A.'s Fourteenth Amendment rights, M.A. suffered and continues to suffer injury.

50.    As a direct and proximate result of the foregoing, Jackson and Clark deprived M.A. of his right to bodily integrity, and caused the Plaintiff to suffer financial injury, significant indignities, and to be hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervous system and person, all of which has caused and will continue to cause M.A. physical, mental, and emotional pain and suffering, all to his general damage in a sum which will be proven at trial.

<u>Count 2 – Municipal Liability under *Monell*[1]</u>

51.    During the 2023-2024 school year, the Defendant, PGSD, had an unofficial policy or custom of failing to train employees and enforce policies to prevent and report physical abuse of school children.  This is evidenced by the PGSD repeatedly violating state law reporting requirements for suspected abuse and the PGSD Bullying or Harassing Behavior Policy.

---

[1] Plaintiffs understand this claim was previously dismissed by the Court.  See [36].  However, Plaintiffs would like to preserve the record for purposes of appeal.  Plaintiffs will agree to an order that complies with this Court's previous ruling.  Plaintiffs hope only to preserve any appealable issue by asserting the *Monell* claim in Plaintiff's Amended Complaint.

52.    Mississippi law requires that teachers who suspect abuse to report the suspicion to the proper authorities immediately.  See Miss. Code Ann. §43-21-353.

53.    PGSD was aware of the risk to students of physical assault, bullying, and harassing behavior and developed a Bullying or Harassing Behavior Policy, which prohibited "any physical act or any threatening communication" that places a student or employee in actual or reasonable fear of harm.  See PGSD's Bullying or Harassing Behavior Policy, attached as **Exhibit "A**."   This policy was promulgated by the PGSD School Board.

54.    The Defendant, PGSD and the PGSD School Board, the official policymaker, had actual and/or constructive knowledge of this unofficial policy or custom (of failing to train employees to prevent and report abuse) because PGSD and its employees repeatedly violated state law and the Bullying or Harassing Behavior Policy by failing to report suspected abuse. PGSD teachers heard M.A. calling out for help and ignored his pleas. PGSD teachers reported that M.A.'s physical abuse "was not the first time."  PGSD teachers stated that the abuse was only divulged to M.A.'s parents in February 2024 because this time it left marks.    PGSD Principal, Beth Varnes, was aware of this abuse.  PGSD Assistant Superintendent, Belinda Dammen, was aware of M.A.'s abuse and characterized it as "not an assault" in an attempt to avoid the mandatory reporting requirements for suspected abuse.

55.    M.A. was deprived of his constitutional right to bodily integrity and to be free from the use of force that was arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning as secured by the Fourteenth Amendment.[2]   The moving force behind this violation was PGSD's unwritten policy or custom

---

[2] School children have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.  *Shillingford v. Holmes*, 634 F. 2d 263, 265 (5th Cir. 1981).  This principle was affirmed in *Jefferson v. Ysleta Independent School District*, 817 F. 2d 303, 305 (5th 1987) where the Fifth Circuit found that lashing a child to a chair violated the student's substantive due process "right to be free of state-occasioned damage

of failing to train its employees to prevent and report physical/emotional/verbal abuse of school children.

<u>Failure to Train and Supervise, 42 U.S.C. § 1983</u>

56.    The Defendant, PGSD, has a duty to train and supervise teachers, paraprofessionals, and other personnel in order to ensure the safety, well-being, and bodily integrity of students entrusted to their care and supervision. Specifically, PGSD has a duty to train and supervise teachers and paraprofessionals on PGSD's Bullying or Harassing Behavior Policy, which prohibited "any physical act or any threatening communication" that places a student or employee in actual or reasonable fear of harm.  See **Exhibit "A."**

57.    The Defendant, PGSD, failed to discharge these duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that PGSD's Bullying or Harassing Behavior Policy prohibited "any physical act or any threatening communication" that places a student or employee in actual or reasonable fear of harm.  See *id*. This training was non-existent or inadequate by failing to define and describe what acts constitute a "physical act" or "threatening communication."

58.    The Defendant, PGSD, failed to discharge these duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that a teacher who witnesses bullying or harassing behavior should promptly complete a "Bullying/Harassing Behavior" complaint so that an investigation can begin.  See *id*.  This training was inadequate by failing to define and describe what acts constitute a "physical act" or "threatening communication," how to report abuse, to whom the report should be made, and

---

to her bodily integrity."  *Id*.  See also *Gonzales v. Ysleta Independent School District*, 996 F. 2d 745, 753-60 (5th Cir. 1993).

under what time constraints. This is evidenced by the fact that other PGSD teachers never reported M.A.'s suspected abuse though they were aware of it.

59.    The Defendant, PGSD, acted intentionally and with deliberate indifference in adopting its training policy. Specifically, PGSD acted with deliberate indifference in failing to adequately train and supervise its teachers, including Jackson and Clark. Specifically, the PGSD failed to ensure employees were adequately trained to avoid violating students' rights to bodily integrity, to report suspected abuse, to follow the Bullying or Harassing Behavior Policy, and ensure reporting requirements were implemented and followed. PGSD was aware of, and disregarded, the obvious and known consequences of inadequate employee training on bodily integrity for its students.

60.    The Defendant, PGSD, has a duty to train and supervise teachers, paraprofessionals, and other personnel in order to ensure the safety, well-being, and bodily integrity of students entrusted to their care and supervision. Specifically, PGSD has a duty to train and supervise teachers and paraprofessionals about their legal duty to avoid violating students' rights to bodily integrity including physical abuse.

61.    The Defendant, PGSD, failed to discharge these duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that physical abuse of students was strictly prohibited. This training policy was inadequate by failing to define and describe what acts constitute physical abuse and how to avoid abuse with students exhibiting behavioral problems or special education students. Further, this training was inadequate by failing to direct employees when to seek and obtain a behavioral intervention plan for students exhibiting behavioral problems or special education students.

11

62.     The Defendant, PGSD, failed to discharge these duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that suspected abuse of students must be reported to the proper authorities immediately.  See Miss. Code Ann. §43-21-353.  This training was inadequate by failing to define and describe what acts constitute physical abuse, how to report abuse, to whom the report should be made, and under what time constraints.

63.     PGSD had notice of a pattern of similar bodily integrity violations.  PGSD was not enforcing its anti-bullying policy on students or teachers.   In *Green v. PGSD*, L.G. was subjected to physical and mental bullying, harassment, and physical abuse while a student at PGSD in violation of PGSD policy and L.G.'s right to bodily integrity.   L.G.'s reports of her abuse went unanswered and unaddressed by school administration in violation of the school's bullying policies.   See *Green v. PGSD*, 21-CV-00011-RK, Jackson County Circuit Court.  PGSD's violations in *Green* were similar to PGSD's violation of M.A.'s right to bodily integrity.

64.     PGSD had notice of a pattern of similar bodily integrity violations.  PGSD was not enforcing its anti-bullying policy on students or teachers.  In 2023-2024, S.H. was subjected to physical assault, bullying, and harassment while a student at PGSD in violation of PGSD policy and S.H.'s right to bodily integrity.  See *Hutton v. PGSD*, 25-124-CT, Jackson County Circuit Court.   S.H.'s reports of her abuse went ignored and unaddressed by school administration. PGSD's violations with regard to S.H. were similar to PGSD's violation of M.A.'s right to bodily integrity.

65.     As a direct result of PGSD's inadequate training and failure to adopt adequate policies instructing teachers on how to recognize and report abuse, Jackson and Clark subjected

M.A. to physical abuse in direct violation of M.A.'s right to bodily integrity, state law, and Department of Education regulations.

66.    Had PGSD made any effort to properly train and supervise its teachers by properly defining and describing what acts constitute physical abuse, how to report suspected abuse, to whom the report should be made, under what time constraints, and trained on/enforced its own Bullying or Harassing Behavior Policy, Plaintiff would likely not have suffered these egregious and conscience-shocking abuses by the Defendants, nor would Plaintiff likely have sustained the damages he sustained.  M.A.'s abuse would have been prevented altogether or reported and stopped the first time it happened.

67.    The violation of M.A.'s right to bodily integrity was the highly predictable consequence of PGSD's failure to train and supervise its employees in abuse prevention, reporting, and its own Bullying or Harassing Behavior Policy. PGSD's failure to train or supervise its employees constituted deliberate indifference to M.A.'s constitutional right to bodily integrity.

68.    The abuse has caused M.A. physical injury, significant trauma, and increased his negative behaviors.  This abuse has also made him more fearful of teachers and other authority figures, and made a child, already struggling with a disability, even more difficult to include in community activities and school activities with non-disabled peers.  Jackson's and Clark's abuse has inflicted significant trauma on M.A. and puts him at a greater risk of emotional/mental dysregulation in the future.

69.    The acts and omissions of the Defendants were conducted within the scope of their official duties and employment and under color of state law.

70.     The acts and omissions of PGSD, as described above, caused Plaintiff's damages in that he suffered physical and mental pain and lasting damage that he will endure in the future.

<u>Count 3 – Violation of Section 504 of the Rehabilitation Act</u>

71.     The Individuals with Disabilities Education Act ("IDEA") guarantees a free and appropriate public education ("FAPE") to children with disabilities throughout the United States and ensures special education and related services are provided to those children.

72.     Section 504 of the Rehabilitation Act compels schools receiving federal assistance to provide a free and appropriate public education to disabled students.  It provides, "No otherwise qualified individual with a disability in the United States… shall, solely, by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." See 29 U.S.C. § 794.  Section 504 provides relief from discrimination on the basis of disability.

73.     M.A. was denied a free and appropriate public education under the IDEA and discriminated against on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

74.     During the 2023-2024 school year at PGSD, M.A. was a special education student with a qualifying disability, autism spectrum disorder and limited communication skills.  During his first-grade year, M.A. was in an inclusion setting.  This means M.A. was in a regular education classroom with neurotypical peers.  Though M.A. was in a regular education class, he was to be provided certain services according to his individual education plan (I.E.P.).

75.     PGSD refused to provide reasonable accommodations for M.A. that were necessary for M.A. to receive the full benefit of the school's programs.  PGSD handed M.A. a

tablet to distract him during class instead of instituting an appropriate behavioral intervention program (B.I.P.) to address his behavioral issues so that he could participate in the class.

76.    M.A.'s individual education plan (I.E.P.) does not authorize the daily use of a tablet nor does it provide behavioral interventions to address M.A.'s behavioral issues. Further, no behavioral intervention plan (B.I.P.) was developed for M.A. though his I.E.P. recognizes the existence of behavioral issues.

77.    The I.E.P. provided by PGSD did not meet the individual educational needs of M.A. as adequately as the needs of nonhandicapped persons were met. The I.E.P. did not address M.A.'s behavioral needs and, as such, it was not reasonably calculated to enable M.A. to receive educational benefits.

78.    M.A.'s I.E.P. notes that "M.A. will stay on task to complete assignments with minimal cues." However, no interventions were planned to accomplish this goal. Instead, M.A. was handed a tablet when he was difficult to handle or off task. This action was taken in bad faith and demonstrates a gross departure from accepted educational standards. It also violated M.A.'s I.E.P. because M.A. was not afforded any education while playing on a tablet.

79.    Further, PGSD failed to implement M.A.'s I.E.P. when it failed to ensure he was completing his classwork and required testing.[3]

80.    PGSD's actions were taken because of M.A.'s disability. No other children in Ms. Jackson's classroom were given a tablet during class to distract them from their classwork or allowed to miss required testing. M.A.'s needs were not met in the same manner as his non-disabled peers.

---

[3] 34 C.F.R. § 104.33(b)(2) allows the 504 FAPE requirement to be met through the <u>full implementation</u> of an individualized education program developed in accordance with the standards of IDEA.

81. M.A.'s autism and behavioral problems (which are a function of his disability) made him require more attention and effort than his neurotypical peers. Rather than supply that necessary effort, PGSD ignored M.A. and failed to ensure that he received a free and appropriate education alongside his nondisabled peers.

82. PGSD, Ms. Jackson, and Ms. Clark failed to provide M.A. with a free and appropriate public education by allowing him to play on a tablet or electronic device instead of participating in class, by failing to address his behavioral problem with appropriate interventions, and allowing him to miss required state testing. When M.A. was placed in a new classroom he was unable to cope, demonstrated unchecked behavioral issues, and required parental intervention to teach him how to sit in a classroom.

83. M.A.'s i-ready diagnostic assessment in May 2024, following the 2023-2024 school year, demonstrated that he made only 18% progress toward typical annual growth. This lack of progress demonstrates PGSD's discrimination against M.A. – it was easier to hand him a tablet than educate him.

84. PGSD, Ms. Jackson, and Ms. Clark excluded M.A. from an appropriate education comparable to that provided to other students without disabilities (who were required to complete their classroom assignments, complete state testing, and not allowed to play on a tablet). This exclusion and/or denial were solely because of M.A.'s disability and demonstrates a gross departure from accepted educational standards and deliberate indifference to M.A.'s rights. The education provided by PGSD did not meet M.A.'s needs as adequately as it met the needs of non-disabled students.

85.    PGSD, Ms. Jackson, and Ms. Clark, knew of and disregarded an excessive risk to M.A.'s education by allowing him to play on a tablet, not complete assignments, and miss required state testing.

86.    By the acts and failure of PGSD, Ms. Jackson, and Ms. Clark, M.A. was subjected to discrimination under educational programs and activities of PGSD, including but not limited to classroom instruction, testing, and behavioral instruction.  Such discrimination was solely by reason of M.A.'s disability and was in violation of Section 504.

87.    As the direct and proximate result of violation Section 504, PGSD caused M.A. to suffer the injuries and losses described herein and caused M.A. to suffer a loss of rights guaranteed by Section 504.

88.    As the entity held accountable for violations of Section 504, PGSD is liable for all said injuries and losses.

<u>Count 4 – Violation of the ADA</u>

89.    Plaintiffs adopt the allegations from Count 3 and incorporate them here as if copied fully.

90.    The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. §12132.

91.    During the 2023-2024 school year at PGSD, M.A. was a special education student with a qualifying disability, autism spectrum disorder and limited communication skills.  During his first-grade year, M.A. was in an inclusion setting.  This means M.A. was in a regular

education classroom with neurotypical peers. Though M.A. was in a regular education class, he was to be provided certain services according to his individual education plan (I.E.P.).

92.    M.A. was discriminated against by PGSD on the basis of his disability. PGSD refused to provide reasonable behavioral accommodations for M.A. that were necessary for M.A. to receive the full benefit of the school's programs.

93.    M.A.'s individual education plan (I.E.P.) does not authorize the daily use of a tablet nor does it provide behavioral interventions to address M.A.'s behavioral issues. Further, no behavioral intervention plan (B.I.P.) was developed for M.A. though his I.E.P. recognizes the existence of behavioral issues. M.A.'s I.E.P. notes that "M.A. will stay on task to complete assignments with minimal cues." However, no interventions were planned to accomplish this goal. Instead, M.A. was handed a tablet when he was difficult to handle or off task. This action demonstrates a gross departure from accepted educational standards and deliberate indifference to M.A.'s rights. These actions were taken based on M.A.'s disability.

94.    PGSD failed and refused to provide necessary behavioral accommodations for M.A. Without appropriate behavioral interventions, M.A. could not participate in class and receive a free and appropriate public education.

95.    PGSD, Ms. Jackson, and Ms. Clark failed to provide M.A. with a free and appropriate public education by allowing him to play on a tablet or electronic device instead of participating in class, by failing to address his behavioral problem with appropriate interventions, and allowing him to miss required state testing. When M.A. was placed in a new classroom, he was unable to cope, demonstrated unchecked behavioral issues, and required parental intervention to teach him how to sit in a classroom.

96. M.A.'s i-ready diagnostic assessment in May 2024, following the 2023-2024 school year, demonstrated that he made only 18% progress toward typical annual growth. This lack of progress demonstrates PGSD's discrimination against M.A. – it was easier to hand him a tablet than educate him.

97. PGSD, Ms. Jackson, and Ms. Clark excluded M.A. from an appropriate education comparable to that provided to other students without disabilities (who were required to complete their classroom assignments, complete state testing, and not allowed to play on a tablet). This exclusion and/or denial were solely because of M.A.'s disability and behavioral issues and demonstrate a gross departure from accepted educational standards and deliberate indifference to M.A.'s rights. The education provided by PGSD did not meet M.A.'s needs as adequately as the needs of non-disabled students.

98. PGSD, Ms. Jackson, and Ms. Clark, knew of and disregarded an excessive risk to M.A.'s education by engaging in disparate treatment, allowing M.A. to play on a tablet, not complete assignments, and miss required state testing.

99. By the acts and failure of PGSD, Ms. Jackson, and Ms. Clark, M.A. was subjected to discrimination under educational programs and activities of PGSD, including but not limited classroom instruction, testing, and behavioral instruction. Such discrimination was solely by reason of M.A.'s disability and was in violation of the Americans with Disabilities Act.

100. As a direct and proximate result of violating the ADA, PGSD caused M.A. to suffer the injuries and losses described herein, and caused M.A. to suffer a loss of rights guaranteed by the ADA.

101. As the entity held accountable for violations of the ADA, PGSD is liable for all of said injuries and losses.

<u>Count 5 – Mississippi Tort Claims Act and Negligence</u>

102.    The Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against governmental entities for acts or omissions giving rise to liability.    PGSD is a governmental entity under the MTCA.

103.    Mississippi has waived sovereign immunity for claims for money damages arising out of the torts of governmental entities and employees, unless expressly exempted.  Miss. Code, Ann. § 11-46-9(1).  Discretionary functions are exempted, but ministerial duties are not.

104.    A ministerial duty is one positively designated by statute, ordinance, or regulation.  Here, the applicable statutes are Mississippi Code, Ann. Section 37-9-69 (requiring the provision of a safe school environment) and 43-21-353 (requiring the immediate reporting of suspected child abuse).

105.    PGSD had a duty to use ordinary care and take reasonable steps to minimize foreseeable risks to students, including M.A., and provide a safe school environment.

106.    PGSD breached its ministerial duty by negligently failing to provide M.A. with a safe school environment, failing to supervise and train employees to prevent abuse, and failing to supervise and train employees to report suspected child abuse immediately.

107.    PGSD was aware of the risk of assault, bullying, and harassment because PGSD developed a policy to address this risk.  See Bullying/Harassment Policy, attached as **Exhibit "A."**

108.    PGSD failed to take reasonable steps to minimize the foreseeable risk of abuse by failing to train employees in abuse prevention, mandatory reporting, and failing to enforce its own Bullying/Harassment Policy.

109.    PGSD employees, Lakeshia Jackson and Wanda Clark, physically abused M.A.

110.    Wanda Clark had a duty to prevent Lakeshia Jackson from stabbing M.A. with a pencil and to prevent any an all mental or physical abuse that occurred in her presence.  Clark failed to prevent Jackson's abuse of M.A.

111.    Upon being notified of Lakeshia Jackson's behavior, which induced her assistant teacher to request a change of classrooms, PGSD, its Assistant Superintendent, and its Principal had a duty to investigate Lakeshia Jackson, notify the parents of children in Jackson's classroom, and ensure that it was providing a safe school environment, free of mental and physical abuse.

112.    Instead, PGSD transferred Jackson's assistant teacher to another classroom, performed no investigation of Jackson, and failed to notify parents of the expressed concern. This violated PGSD's duty to provide a safe school environment and was a proximate cause of M.A. suffering abuse at the hands of Jackson and Clark to include being stabbed with a pencil, yelling in his face, jerking him up from the floor forcefully, and dragging him around by his clothing.

113.    PGSD is liable to M.A. for the breach of its ministerial duty to provide a safe school environment.

114.    To the extent that. Jackson's, Clark's, or any PGSD employee's acts are determined to have occurred outside the course and scope of their employment, those employees are individually liable to M.A. for assault and battery and for the intentional infliction of emotional distress caused to M.A.

115.    The Defendant, PGSD, has a duty to train and supervise teachers, paraprofessionals, and other personnel in order to ensure the safety, well-being, and bodily integrity of students entrusted to their care and supervision. Specifically, PGSD has a duty to

train and supervise teachers and paraprofessionals to prevent abuse, recognize the signs of abuse, and immediately report suspected abuse.

116.    The Defendant, PGSD, failed to discharge these duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that physical/mental/emotional/verbal abuse of students was strictly prohibited.  This training policy was inadequate by failing to define and describe what acts constitute physical abuse and how to avoid abuse with students exhibiting behavioral problems or special education students.  Further, this training was inadequate by failing to direct employees when to seek and obtain a behavioral intervention plan for students exhibiting behavioral problems or special education students.

117.    The Defendant, PGSD, failed to discharge its duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that suspected abuse of students must be reported to the proper authorities immediately.  PGSD's training was inadequate by failing to define and describe what acts constitute physical/mental/emotional/verbal abuse, how to report abuse, to whom the report should be made, and under what time constraints.

118.    PGSD teachers and administrators failed to report M.A.'s abuse as required by Section 43-21-353 of the Mississippi Code, Ann.

119.    The Defendant, PGSD, failed to discharge its duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that PGSD's Bullying or Harassing Behavior Policy prohibited "any physical act or any threatening communication" that places a student or employee in actual or reasonable fear of harm.  See PGSD's Bullying or Harassing Behavior Policy, attached as **Exhibit "A."**  This training was

inadequate by failing to define and describe what acts constitute a "physical act" or "threatening communication."

120.    The Defendant, PGSD, failed to discharge its duties by failing to adopt an adequate training policy to instruct Lakeshia Jackson, Wanda Clark, and other employees that a teacher who witnesses bullying or harassing behavior should promptly complete a "Bullying/Harassing Behavior" complaint so that an investigation can begin.  This training was inadequate by failing to define and describe what acts constitute a "physical act" or "threatening communication," how to report abuse, to whom the report should be made, and under what time constraints.

121.    Despite PGSD's Bullying or Harassing Behavior Policy, PGSD employees inflicted physical abuse, verbal abuse, mental abuse, and emotional abuse on M.A. by stabbing him with a pencil, yelling in his face, jerking him up from the floor forcefully, and dragging him around by his clothing.

122.    PGSD, Assistant Superintendent, Belinda Dammen, and Principal, Beth Varnes, failed to ensure employees were adequately trained and supervised to avoid violating students' rights to bodily integrity, to report suspected abuse, to follow the Bullying or Harassing Behavior Policy, and ensure students were provided with a safe school environment.

123.    PGSD had notice of a pattern of similar violations.  PGSD was not enforcing its anti-bullying policy on students or teachers.  In *Green v. PGSD*, L.G. was subjected to physical and mental bullying, harassment, and physical abuse while a student at PGSD in violation of PGSD policy and L.G.'s right to bodily integrity.   L.G.'s reports of her abuse went unanswered and unaddressed by school administration.  See *Green v. PGSD*, 21-CV-00011-RK, Jackson

County Circuit Court.  PGSD's violations in *Green* were similar to PGSD's violation of M.A.'s rights.

124.    PGSD had notice of a pattern of similar violations.  PGSD was not enforcing its anti-bullying policy on students or teachers.  In 2023-2024, S.H. was subjected to physical assault, bullying, and harassment while a student at PGSD in violation of PGSD policy and S.H.'s right to bodily integrity.  S.H.'s reports of her abuse went ignored and unaddressed by school administration. PGSD's violations with regard to S.H. were similar to PGSD's violation of M.A.'s rights.

125.    As a direct and proximate result of PGSD's inadequate training and supervision, Defendants subjected M.A. to physical/mental/emotional abuse in violation of M.A.'s right to a safe school environment and to be free from abuse pursuant to state law and PGSD policy.

126.    As a direct and proximate result of PGSD's inadequate training and supervision, M.A. was caused to suffer physical injury, significant trauma, and an increase in his negative behaviors.  M.A. also became more fearful of teachers and other authority figures.  M.A.'s abuse made a child, already struggling with a disability, even more difficult to include in community activities and school activities with non-disabled peers.  The Defendants' abuse has inflicted significant trauma on M.A. and puts him at a greater risk of emotional/mental dysregulation in the future.

127.    The acts and omissions of the Defendants were conducted within the scope of their official duties and employment and under color of state law.

128.    The acts and omissions of the Defendants, as described above, caused Plaintiff's damages in that he suffered physical and mental pain and lasting damage that he will endure in the future.

Count 6 – Assault and Battery

129.    Assault and battery are intentional torts. See Miss. Code Ann. § 15-1-35 (Supp. 1990) and *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1217-1218 (Miss. 1990). The intentional tort of assault "occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension." *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1043 (Miss. 2001) (citing *Webb v. Jackson,* 583 So. 2d 946, 951 (Miss. 1991)). Further, "battery goes one step beyond an assault in that a harmful contact actually occurs." *Greenwaldt*, 786 So. 2d at 1043 (citing Restatement (Second) of Torts, § 18 (1965)).

130.    Lakeshia Jackson and Wanda Clark intentionally caused harmful or offensive physical contact with M.A. by stabbing him with a pencil, jerking him up from the ground forcefully, and dragging him around by his clothing.

131.    Neither M.A. nor his parents consented to this harmful and offensive physical contact.

132.    M.A. suffered damages and required medical treatment for his injuries as a result of the harmful and offensive physical contact by Ms. Jackson and Ms. Clark.

Count 7 – Intentional Infliction of Emotional Distress of M.A.

133.    Ms. Jackson and Ms. Clark caused M.A. emotional distress by stabbing him with a pencil, yelling in his face, jerking him up from the ground forcefully, causing him to cry out for help, dragging him around by his clothing, failing to report his abuse, and refusing to disclose what happened.

134.    Ms. Jackson's and Ms. Clark's conduct was objectively outrageous and beyond all possible bounds of decency.  M.A. was a young child abused by trusted teachers.

135.    Ms. Jackson and Ms. Clark intended to cause M.A. emotional distress as these acts are volitional and intentional in nature.

136.    M.A. suffered emotional distress due to Ms. Jackson's and Ms. Clark's actions in stabbing him with a pencil, yelling in his face, jerking him up from the ground forcefully, causing him to cry out for help, dragging him around by his clothing, failing to report his abuse, and refusing to disclose what happened.

137.    It was foreseeable that Ms. Jackson's and Ms. Clark's outrageous conduct would cause M.A. emotional distress.

## **DAMAGES AND REMEDIES**

138.    The Defendants, by their actions, as described in the above paragraphs, have caused the Plaintiffs physical, mental, and emotional damages.

139.    The Plaintiffs are entitled to damages for physical injury, emotional distress, attorney's fees, and punitive damages under 42 U.S.C. § 1983.

140.    The Plaintiffs are entitled to compensatory damages and attorney's fees under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

141.    The Plaintiffs are entitled to emotional distress damages under the Americans with Disabilities Act.

142.    As a result of the above-described actions, the Adams and M.A. suffered emotional distress, physical injuries, financial loss, and pain and suffering, among other damages, for which they are entitled to actual and compensatory damages under Mississippi common law and the statutes cited above, in addition to punitive damages as pled herein.

26

143.    The actions of Ms. Jackson, and Ms. Clark are unlawful and/or so grossly negligent as to make these Defendants liable to the Plaintiffs for punitive damages.  Likewise, the deliberate indifference of PGSD, Ms. Jackson, and Ms. Clark rises to a level of gross negligence and should subject them to punitive damages.

144.    As a direct and proximate result of Defendants' actions described hereinabove, the Plaintiff was caused to suffer the following injuries and damages:

      A.    Past, present, and future physical injury and pain, emotional distress and mental anguish, inconvenience, humiliation, shame, loss of enjoyment of life, loss of self-esteem, and fear and embarrassment, all of which Plaintiffs suffered;

      B.    Past, present, and future economic damages, including but not limited to medical bills, school relocation expenses, and others;

      C.    Attorney's fees and costs under 42 U.S.C. § 1988(b), plus pre-judgment and post-judgment interest; and

      D.    All other damages available under federal and state law, including punitive and/or exemplary damages.

145.    On information and belief, Plaintiffs allege that M.A.'s injuries were serious and that they have had significant consequences on his life.

146.    That the aforesaid damages to the Plaintiffs having been proximately caused by the negligence, gross negligence, deliberate indifference, reckless disregard, or intentional acts of the Defendants.  Plaintiffs are entitled to sue and recover damages proximately resulting therefrom, including compensatory damages, punitive damages, attorney's fees, pre-judgment

and post-judgment interest, and such other relief as Plaintiffs may be entitled to under the laws of Mississippi and the United States.

WHEREFORE, PREMISES CONSIDERED, your Plaintiffs, LAUREN and MICHAEL ADAMS, and as Natural Parents and Next Friends of M.A., a minor, demand judgment of and from the Defendants in an amount that will reasonably compensate Plaintiffs for their injuries and/or damages and to punish Defendants in order to deter future wrongful conduct, with said damages to include compensatory damages, in an amount determined by a jury, as well as punitive damages, in an amount determined by a jury, attorney's fees, and costs of these proceedings, pre-judgment and post-judgment interest, and such other relief as Plaintiffs may be entitled to under the laws of the State of Mississippi and the United States of America, and any and all other relief this Honorable Court deems just, proper, and equitable.

ON THIS the 21st day of July, 2025.

Respectfully submitted,
**LAUREN and MICHAEL ADAMS, as Natural Parents and Next Friends of M.A., A minor**


BY: _s/ Courtney P. Wilson_____
COURTNEY P. WILSON (MSB # 103531)


DOUGLAS L. TYNES, JR. (MSB # 101921)
COURTNEY P. WILSON (MSB #103531)
Tynes Law Firm, P.A.
525 Krebs Avenue (39567)
Post Office Drawer 966
Pascagoula, MS 39568-0966
228.769.7736 Telephone
228.769.8466 Facsimile
monte@tyneslawfirm.com
courtney@tyneslawfirm.com