## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

LAUREN ADAMS, as Natural Parent
and Next Friend of M.A., a Minor AND
MICHAEL ADAMS, as Natural Parent
And Next Friend of M.A., a Minor                                      PLAINTIFFS

v.                                            CIVIL ACTION NO. 1:25-CV-040-LG-BWR

PASCAGOULA GAUTIER SCHOOL
DISTRICT; LAKEISHA JACKSON,
Individually; WANDA CLARK,
Individually                                                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING
### [40] MOTION TO DISMISS AND GRANTING IN PART
### AND DENYING IN PART [43] MOTION TO DISMISS

Plaintiffs Lauren and Michael Adams, as natural parents and next friends of

M.A., allege that M.A. was physically, mentally, and emotionally abused by PGSD

school teachers.  Defendant Wanda Clark, individually, seeks dismissal of the

federal and state law claims against her.  Plaintiffs oppose Clark's [40] and [43]

Motions.  Clark maintains her qualified immunity, so any federal claims against her

must be dismissed.  Further, Clark maintains her immunity under the MTCA for

any negligent acts.  Plaintiffs' assault and battery claims against Clark survive.

The intentional infliction of emotional distress claim fails to state a plausible claim

on its face.

### BACKGROUND

The Adamses are M.A.'s parents.  M.A. attended the PGSD Eastlawn

Elementary School as a special education student.  M.A. was diagnosed with autism

spectrum disorder and possesses limited communication skills.  Due to his disabilities, PGSD provides certain services to M.A.  M.A. was assigned to Lakeisha Jackson's first-grade classroom.

Wanda Clark served as an assistant teacher to Jackson.  Another teacher also served as an assistant teacher to Jackson at the beginning of the 2023–2024 school year, but she moved out of the classroom due to Jackson's inappropriate treatment towards students.  Plaintiffs allege Jackson and Clark began physically, mentally, and emotionally abusing M.A. as early as August 2023.  Other teachers overheard M.A. screaming in the hallway that Jackson was hurting him and heard Jackson screaming at M.A.  In January 2024, Clark physically dragged M.A. to his aunt's car by his jacket.

On February 27, 2024, M.A. told the parents that Jackson stabbed M.A. in the arm with a pencil; M.A. received medical care for the wound.  The parents also learned that "Jackson put her hands around M.A.'s wrists and jerked him off the ground so hard that it created visible handprints on his wrists."  Am. Compl. [38] at 4.  Other teachers informed Mrs. Adams that Jackson had harmed M.A. previously, and the school called the parents only because there were visible marks.  Plaintiffs allege that, upon information and belief, Clark knew of Jackson's abuse but failed to notify the proper authorities.  Upon information and belief, Plaintiffs allege that Clark and Jackson abused M.A. on more than one occasion.

Plaintiffs filed this lawsuit in the Circuit Court of Jacson County, Mississippi, on January 28, 2025, against PGSD, Jackson, and Clark.  Defendants

removed this action pursuant to 28 U.S.C. § 1441.  The claims against Clark arise

under the Fourteenth Amendment right to Substantive Due Process and Mississippi

tort law.[1]

Plaintiffs seek actual, compensatory, and emotional distress damages;

attorney's fees and costs; prejudgment and post-judgment interest; punitive

damages; and any other relief Plaintiffs may be entitled to under Mississippi and

federal laws and equity.  In separate motions, Clark seeks dismissal of all federal

and state law claims for failure to state a claim.  Clark raises the defense of

qualified immunity and immunity under the Mississippi Torts Claims Act

("MTCA").  The parties have fully briefed the issues.

## DISCUSSION

Clark's motions seek dismissal for failure to state a claim under Rule

12(b)(6).  Under Rule 12(b)(6), the Court "accept[s] all well-pleaded facts as true and

construe[s] the complaint in the light most favorable to the plaintiff."  *In re Great

Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted).

Further, "any ambiguities in the controlling substantive law must be resolved in the

plaintiff's favor."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir.

2019) (citation modified).  Courts do not have to accept legal conclusions presented

as factual allegations.  *Id.*  "Nor does a complaint suffice if it tenders 'naked

---

[1] Plaintiffs confess that they may not maintain claims against Clark under the Fourth Amendment, Section 504 of the Rehabilitation Act, or the Americans with Disabilities Act; they confess Clark cannot be liable for failure to train and supervise under § 1983.  *See* Pls.' Mem. [46] at 13–17.

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs argue that Clark's motions are untimely under Rule 15(a)(3). "[A]lthough [Clark's] motion[s] to dismiss [are] found to be untimely, that alone does not necessarily waive all defenses under [Rule 12(b)(6)]." *See Hydradyne, LLC v. McCurdy*, No. 2:13-CV-748-JRG, 2013 WL 12134083, at *2 (E.D. Tex. Dec. 3, 2013). Therefore, the Court will consider the merits of Clark's motions, despite the untimeliness.[2]

---

[2] The Court reminds Clark, in future she should follow the Federal Rules of Civil Procedure's deadlines.

## I.  CLARK'S [40] MOTION TO DISMISS FEDERAL CLAIMS

Plaintiffs sue Clark under 42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."  *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).  The statute provides a cause of action against a person who, acting under color of state law, violates an individual's rights secured by the Constitution or federal law.  *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citation omitted); 42 U.S.C. § 1983.  Plaintiffs must have "an underlying constitutional or statutory violation" as a "predicate to liability under § 1983."  *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989).

Plaintiffs allege Clark violated M.A.'s Fourteenth Amendment right to bodily integrity.  The only specific alleged action attributable to Clark is that she dragged M.A. to his aunt's car by his jacket.  Plaintiffs also argue Clark acted with deliberate indifference by ignoring Jackson's alleged abuse against M.A.  The Fifth Circuit recognizes that school children maintain their liberty interest in their bodily integrity, even while attending school, and a school employee physically abusing a child violates that right.  *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc).

Clark raises the doctrine of qualified immunity as a defense to the federal claims.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation modified). The two-prong analysis of qualified immunity is (1) whether there is sufficient evidence showing a violation of a constitutional right, and (2) "whether the right at issue was clearly established." *Id.* at 232 (citation modified). Either prong may resolve the issue of qualified immunity, and "the Court has discretion to decide which of the two prongs should be addressed first." *Smith v. City of Madison*, 364 F. Supp. 3d 656, 661 (S.D. Miss. 2018) (citing *Pearson*, 555 U.S. at 236).

For a clearly established right, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation modified). "Whether the violative nature of *particular* conduct is clearly established" depends on "the specific context of the case, not a broad general proposition." *Id.* (citation modified).

The burden to overcome qualified immunity rests on the plaintiff. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). The plaintiff "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc) (citation omitted). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and

that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). If "the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).

The Court ordered Plaintiffs to file a *Schultea* reply to determine whether qualified immunity applies. When a court orders a plaintiff to file a Rule 7 *Schultea* reply, the plaintiff must "reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1433. "The court then considers whether the complaint and *Schultea* reply support the claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Lee v. Morial*, No. 01-30875, 2002 WL 971519, at *4 (5th Cir. Apr. 26, 2002) (citation modified). Failure to provide sufficient detail in a *Schultea* reply results in the dismissal of the complaint. *Carson v. County of Warren*, No. 3:21-cv-593-KHJ-MTP, 2023 WL 9120471, at *2 (S.D. Miss. June 23, 2023) (citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)).

### A. CLARK'S OWN ACTIONS AGAINST M.A.

Plaintiffs alleged Clark dragged M.A. by the jacket to his aunt's car. To determine whether governmental action violates due process, courts use the "shock the conscience" standard. *Rosales-Mireles v. United States*, 585 U.S. 129, 137–38 (2018) (citations omitted); *Kennedy v. City of Arlington*, 165 F.4th 937, 945 (5th Cir.

2026).  The "standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest, or in some circumstances if it resulted from deliberate indifference."  585 U.S. at 138 (citation modified).  The "shock the conscience" standard is a question of law.  *See Galaviz v. Reyes*, 95 F.4th 246, 253 (5th Cir. 2024).

"[C]orporal punishment is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."  *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305–06 (5th Cir. 1987) (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984)).  Conduct that occurs "in a disciplinary or pedagogical setting" does not violate due process.  *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 414 (5th Cir. 2021) (citation modified).

Plaintiffs' *Schultea* reply relies on *Saldana v. Angleton Independent School District*, No. 3:16–CV–159, 2017 WL 1498066 (S.D. Tex. Apr. 25, 2017), where the court found qualified immunity did not apply.  The facts in *Saldana* are distinguishable.  The plaintiffs in *Saldana* alleged the bus driver had assaulted the minor "a verified and documented *thirty-nine times*" by "pinching, slapping, and striking him with a metal belt buckle" with "no provocation whatsoever[.]"  2017 WL 1498066, at *1 (emphasis original).

Here, the only specific alleged fact is that one time Clark dragged M.A. to his aunt's car by his jacket.  Am. Compl. [38] at 4.  Plaintiffs' other allegations against Clark are vague: "As early as August 2023, Clark began inflicting physical abuse on

M.A." *Id.* at 3 (citation modified).  The Court need not consider this conclusory statement.  *See Walker*, 938 F.3d at 735 (citation omitted).  Plaintiffs allege elsewhere that upon information and belief: "M.A. was subjected to this abuse by the same instructors, Jackson and Clark, on more than one occasion."  Am. Compl. [38] at 5.  The Court will not accept this allegation without more.  *See McLin v. Twenty-First Jud. Dist.*, 614 F. Supp. 3d 278, 288 (M.D. La. 2022) (citation modified) ("As a rule, an information and belief allegation cannot stand on its own; rather, it must be accompanied by sufficient additional detail to make the allegation plausible on its face.").[3]

"Taken as a whole," these allegations cannot overcome Clark's assertion of qualified immunity because such conduct is not "objectively unreasonable in light of the clearly established law at the time."  *See Saldana*, 2017 WL 1498066, at *2–3. Plaintiffs' allegations against Clark, even after the *Schultea* reply, still "fail to specify how, where, when, and what capacity Clark acted."  *See* Order [42] at 4. Clark retains her qualified immunity for these alleged actions.

## B. FAILURE TO REPORT

Plaintiffs argue that Clark's alleged failure to report Jackson's abuse violates M.A.'s bodily integrity.  Plaintiffs rely on the *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994), theory of deliberate indifference to overcome

---

[3] In the *Schultea* reply, Plaintiffs allege that the "hitting or dragging around a disabled, nonverbal student, [happened] over the period of at least seven months[.]" *See* Pls.' Resp. [49] at 9.  Plaintiffs fail to describe this allegation with any degree of specificity.

qualified immunity.  *Taylor* is inapposite to the present case for these reasons: the official was a *supervisor* in *Taylor*, and *Taylor*'s facts surrounded sexual abuse.  *See Doe ex rel. Doe v. Jewell*, 151 F.4th 236, 245–46 (5th Cir. 2025) (discussing *Taylor*'s prongs); *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 594 (W.D. Tex. 2020) (*Taylor*'s analysis focused on *supervisory* liability.).  The first prong of *Taylor* requires "the defendant learned of facts or a pattern of *inappropriate sexual behavior by a subordinate* pointing plainly toward the conclusion that the subordinate was" abusing the student.  15 F.3d at 454 (citation modified).

Here, the [38] Amended Complaint alleges Clark acted as an *assistant* teacher and alleges no supervisory role over Jackson.  *See* Am. Compl. [38] at 2–3. The Court has not identified a case in the Fifth Circuit where the deliberate indifference standard seen in *Taylor* applied to a nonsupervisory official.  *See Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 301–02 (5th Cir. 2025) ("As a general proposition . . . a plaintiff must identify a case that put the defendant on notice." (citation modified)).  Because Clark did not have supervisory oversight over Jackson (nor have Plaintiffs raised a sexual abuse allegation) the present case falls outside of *Taylor*'s analysis.  *See* 15 F.3d at 453–54.

Moreover, the Fifth Circuit's *Coleman v. Houston Independent School District*, 113 F.3d 528, 534 (5th Cir. 1997), rejected the theory of *respondeat inferior* overcoming qualified immunity.  In *Coleman,* the plaintiff sued the assistant principal for racial discrimination.  The plaintiff argued that the assistant principal was responsible for following discriminatory orders from the deputy district

superintendent. The Fifth Circuit found that the unlawful acts of a superior should not be imputed onto an inferior. "Such an unprecedented rule of vicarious liability would impose individual liability upon subordinates for the acts and omissions of superiors, over whom they have neither control nor authority, thereby creating a new liability theory of *respondeat inferior*." *Id.* The Court will not apply *respondeat inferior* to Clark, an assistant teacher, for another teacher's actions.

Plaintiffs present no other cases with the deliberate indifference standard outside of *Taylor*, so the Court finds that there is a lack of precedent to overcome qualified immunity. *See Mullenix*, 577 U.S. at 12 (citation modified) ("Existing precedent must have placed the statutory or constitutional question beyond debate" to overcome qualified immunity.). Overall, Plaintiffs fail their burden to show specific facts in the *Schultea* reply that Clark's actions were objectively unreasonable to overcome qualified immunity. *See Pearson* 555 U.S. at 231; *Collier*, 569 F.3d at 217; *Carson*, 2023 WL 9120471, at *2. Clark's qualified immunity remains intact, and the federal claims are dismissed.

## II.  CLARK'S [43] MOTION TO DISMISS STATE CLAIMS

### A.  IMMUNITY UNDER MTCA

Clark raises immunity under the MTCA for any actions Clark took within the scope of her employment. An employee cannot "be held *personally liable* for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2) (emphasis added); *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 186 (Miss. 2018) ("Under [the MTCA], if an employee

was acting within the scope of his employment, then he cannot be individually sued. Instead, the plaintiff must sue the government employer . . . . ").[4]  There is a "rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment[.]"  Miss. Code Ann. § 11-46-5(3); § 11-46-7(7).  The burden to overcome the rebuttable presumption rests on Plaintiffs.  *See Singley v. Smith*, 844 So. 2d 448, 452 (Miss. 2003).

Plaintiff did not respond to Clark's assertion of immunity under the MTCA. If a party fails to respond to arguments raised in a motion to dismiss, the party waives or abandons those issues.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").  All allegations against Clark occurred within the time and place of her employment at PGSD.  *See* Miss. Code Ann. § 11-46-5(3); § 11-46-7(7).  Therefore, Clark enjoys the presumption of acting within the scope of her employment at PGSD for negligent torts against M.A. *See Singley*, 844 So. 2d at 452.  Any negligence claims Plaintiffs raise *against Clark* under Count 5 are dismissed because Clark maintains immunity under the MTCA.

---

[4] To the extent Plaintiffs and Clark argue PGSD's liability for ministerial and discretionary duties seen in *Wilcher*, and whether Clark had a duty under the Mississippi mandatory reporting statute, Miss. Code Ann. § 43-21-353, the Court deems these arguments irrelevant.  The focus of these motions is *Clark*'s *personal and individual* liability.

Plaintiffs raise several intentional tort claims against Clark.  An employee does not enjoy immunity for acts considered outside the course and scope of employment such as "conduct constitut[ing] fraud, malice, libel, slander, defamation or any criminal offense."  § 11-46-7(2); *Wilcher*, 243 So. 3d at 186 (The MTCA does not apply, and the employee "cannot take refuge in these provisions.").  The term "malice" includes intentional torts, so "any legal action against a governmental employee for claims of intentional infliction of emotional distress, assault, and battery must necessarily proceed against her as an individual."  *See Renfroe v. Parker*, 374 So. 3d 1234, 1242 (Miss. Ct. App. 2023) (citation modified).  Thus, Clark has no immunity for these intentional tort claims.

## B.  ASSAULT AND BATTERY

Clark argues that the assault and battery claims should be dismissed because Plaintiffs fail to allege facts that Clark intended to harm M.A. or intended to place him in imminent apprehension of contact, and that Plaintiffs fail to allege M.A. actually was in imminent apprehension of contact.  Mississippi considers assault and battery as intentional torts, but they are separate torts.  *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 75–76 (Miss. 2017); *Est. of Puckett v. Clement*, 238 So. 3d 1139, 1146 (Miss. 2018).

> Assault occurs where a person (a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.  A battery goes one step beyond an assault in that a harmful contact actually occurs.

*Renfroe*, 374 So. 3d at 1244 (citation modified).  "To constitute an assault and battery, it is not necessary to touch the plaintiff's body or even his clothing; knocking or snatching anything from plaintiff's hand or touching anything connected with his person, when done in a rude or insolent manner, is sufficient." *Morgan v. Loyacomo*, 1 So. 2d 510, 511 (Miss. 1941) (citations omitted).

"An act is done with the intent of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension or with knowledge that, to a substantial certainty, such apprehension will result." *Jordan v. Wilson*, 5 So. 3d 442, 448 (Miss. 2008) (quoting Restatement (Second) of Torts § 21, cmt. d. (A.L.I. 1965)).  "Intent is a question of fact for the jury." *Id.* at 450 (citation modified).

Clark argues that this Court may find a lack of intent.  *See Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (citation modified).  *Bowden* is inapplicable because there, "none of the claims assert[] that [defendant] acted with 'actual intent' to batter and injure the plaintiffs." *See id.* at 979.[5]  Here, the [38] Amended Complaint asserts that "Clark intentionally caused harmful or offensive physical contact with M.A. by . . . dragging him around by his clothing." *See* Am. Compl. [38] at 25.  Therefore, *Bowden* does not control.

---

[5] The court described the conflicting allegations as incompatible with intent. *See id.* (explaining "it is not possible that the defendants were allowing the mold to exist with the intent of injuring the plaintiffs while at the same time attempting to destroy the mold" by applying spray to intentionally harm plaintiffs).  Further, *Bowden* looks to the Mississippi Workers' Compensation Act ("MWCA") that requires "actual intent to bring the claim of battery outside the scope of the MWCA." *See id.* (citation modified).  This is not a MWCA claim.

While Clark presents other cases where the courts found a lack of intent, those courts acted at a different stage of litigation. *See Webb v. Jackson*, 583 So. 2d 946, 948–49 (Miss. 1991) (summary judgment); *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1041 (Miss. 2001) (directed verdict). At this stage of litigation, the Court cannot take on the jury's role and determine Clark's intent. The Court is limited to whether the [38] Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). At this early stage, the Court finds it can "draw the reasonable inference" that Clark is liable for the alleged assault and battery against M.A. *See id.* Thus, the assault and battery claims survive.

## C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count 7 of the Amended Complaint raises an intentional infliction of emotional distress claim against Clark. The elements of intentional infliction of emotional distress are:

> (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Herbert v. Herbert*, 374 So. 3d 562, 570–71 (Miss. Ct. App. 2023) (citation modified). The standard for an intentional infliction of emotional distress claim is "very high and focuses on the *defendant's conduct* and not the plaintiff's emotional condition." *Id.* at 571 (citation modified) (emphasis added). The nature of the defendant's

-15-

conduct "—as opposed to the seriousness of the consequences—gives impetus to legal redress." *Bowden*, 120 So. 3d at 980 (citation modified).  The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Herbert*, 374 at 571 (citation modified).  Such conduct does not include "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Id.* (citation modified).

Plaintiffs allege that Clark acted wantonly and outrageously towards M.A. by failing to report M.A.'s abuse.  Plaintiffs also allege Clark intended to harm M.A. by dragging him to his aunt's car.  These acts, without more context,[6] do not "go beyond all possible bounds of decency" and are not "utterly intolerable in a civilized community." *See id.*  Plaintiffs allege that "following the incidents, Ms. Adams took M.A. to see medical providers who examined and treated M.A. for the physical and mental injuries he suffered as a result of Jackson and Clark's actions." Am. Compl. [38] at 5.  Plaintiffs do not distinguish the Clark incidents from the Jackson incidents, so the Court still lacks the context to find *Clark's conduct* as outrageous.

There is not a lack of case law in Mississippi for finding outrageous conduct involving a child. *See Smith v. Malouf*, 722 So. 2d 490, 498 (Miss. 1998) (finding outrageous conduct where a girlfriend and her parents tried to hide a child from the unwed father—and put the child up for adoption—while the father was pursuing a

---

[6] Plaintiffs erroneously combine alleged actions *Jackson* took against M.A. (stabbing, yelling, and jerking him off the ground) with *Clark*'s alleged actions. *See* Pls.' Mem. [48] at 16.  The Court can only consider what *Clark allegedly did.*

custody suit); *see also Wilkerson ex rel. Reel v. Allred*, 407 So. 3d 218, 228 (Miss. Ct. App. 2018) (applying summary judgment standard and finding a genuine dispute of material fact for outrageous conduct where the defendant shot and killed a puppy right next to the child); *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 903–04, 907 (Miss. 2011) (refusing summary judgment where defendant fondled child).  But again, Plaintiffs' allegations, which must be taken as true, are not analogous to these cases' outrageous conduct.

As it stands, M.A. seems to have suffered an "indignit[y]" or "petty oppression" from Clark failing to report Jackson's actions and Clark dragging M.A. to his aunt's car.  *See Herbert*, 374 So. 3d at 571.  If Plaintiffs alleged something more egregious (for example, Clark intentionally lied to school officials about Jackson's abuse during an official school investigation, or Clark dragged M.A. fifty yards while he laid on the ground, face down, as punishment for interrupting her), then the Court may have had enough facts to find the intentional infliction of emotional distress claim "is plausible on its face.'"  *See Iqbal*, 556 U.S. at 678. While Clark's alleged actions may be "absolutely despicable and terribly insulting, they are" not outrageous conduct.  *See Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 654 (Miss. 2021) (finding supervisor calling pregnancy a disease and firing plaintiff because she was pregnant did not qualify as outrageous conduct).  The Court dismisses the intentional infliction of emotional distress claim against Clark for failure to state a claim.

To the extent Plaintiffs and Clark argue the validity of claims against PGSD, PGSD did not join in Clark's motions to dismiss.  Clark brought these motions in her individual capacity; arguments on behalf of PGSD are not properly before the Court.  Thus, the Court declines to opine whether the claims against PGSD would survive under a motion to dismiss.

## CONCLUSION

To the extent the parties raise other arguments, the Court has reviewed them and determines that they do not change the result.  Plaintiffs' federal claims against Clark are dismissed due to qualified immunity.  Plaintiffs' state law negligence claims against Clark are dismissed due to MTCA immunity.  Plaintiffs' assault and battery claims against Clark survive.  Finally, the intentional infliction of emotional distress claim against Clark is dismissed for failure to state a claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Wanda Clark's [40] Motion to Dismiss is **GRANTED**.  All federal claims against Clark are hereby **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Wanda Clark's [43] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED AND ADJUDGED** this the 23rd day of March, 2026.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE